# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ALICIA RODRIGUEZ,**          CASE NO. 4:19-cv-00066-MW-CAS

    **Plaintiff,**

v.

**MAXIM HEALTHCARE**
**SERVICES, INC.,**

    **Defendant.**

_____/

## AMENDED COMPLAINT

Plaintiff, ALICIA RODRIGUEZ, hereby sues Defendant, MAXIM HEALTHCARE SERVICES, INC., and alleges:

## NATURE OF THE ACTION

1. This is an action brought under §448.101, *et seq.*, Fla.Stats.

2. This action initially filed in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, and was removed to this court by Defendant.

## PARTIES

3. At all times pertinent hereto, Plaintiff, ALICIA RODRIGUEZ, has been a resident of Florida and was employed by Defendant.

4. At all times pertinent hereto, Defendant, MAXIM HEALTHCARE SERVICES, INC. ("MAXIM"), has been a corporation doing business within Florida, and within the jurisdiction of this court. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable law or laws identified above. Defendant has been Plaintiff's employer in connection with the claims set forth herein.

## CONDITIONS PRECEDENT

5. Any and all conditions precedent to bringing this action have been satisfied.

## STATEMENT OF FACTS

6. Plaintiff began in Defendant's full-time employ in or around 2003, and held the position of licensed practical nurse ("LPN") at the time of her wrongful termination in or around November, 2017. She was also mistreated by agents/employees of Defendant prior to being terminated.

7. Plaintiff's mistreatment came at the hands of the following non-exhaustive list of individuals: Ramona Ward, Defendant's director of nursing ("DoN"); Dewayne Lindsey, an administrator in Defendant's employ; Candice Cunningham, Defendant's compliance officer; and Casandra l/n/u, a recruiter in Defendant's employ.

8.      While in Defendant's employ, Plaintiff she received few if any reprimands. She also received the Nurse of the Year award from Defendant in or around 2015.

9.      During her employment by Defendant, Plaintiff worked as an LPN performing at-home care for chronically-ill patients. Thus, instead of working in a hospital or facility setting, she travelled daily to and from her patients' homes to provide routine care.

10.     In or around 2013, Plaintiff volunteered to take care of patient D.B., an infant born prematurely and left with asthma and other permanent disabilities. D.B. was born without functional airways, and survived only through a tracheotomy tube and a feeding tube requiring around-the-clock maintenance. Because of D.B.'s young age and fragile state, he required extensive care and attention. Plaintiff began to work seven (7) days per week, working sixty (60) to eighty (80) hours each week. On occasion, Plaintiff worked to clean or insert D.B.'s tracheotomy tube, maintain feeding supplies, and provide other care for as many as sixteen (16) hours per day.

11.     D.B.'s mother, Sadja Jones, worked long hours herself as a nursing assistant, and thus relied heavily on Plaintiff's child care. Theresa Austin, D.B.'s grandmother, while not residing in Jones' and D.B.'s home, was also involved in

the care of infant D.B. Jones and Austin frequently complimented Plaintiff about her dedication.

12.  In or around mid-2013, when D.B. was approximately five (5) months old, Debra Black, also an LPN, was assigned to D.B.'s care. Plaintiff continued to work days, and Black worked evenings and additional hours over weekends.

13.  Shortly thereafter, Jones and Austin noticed a difference in the care received by D.B. during Black's shifts from what they had observed from Plaintiff. Frequently, after Black's shift, D.B.'s feeding tubes were left dirty or were not replaced. On one occasion, Black left D.B.'s equipment unplugged. On that occasion, as a result of Black having left the equipment unplugged, Plaintiff had to spend several minutes re-starting the equipment, during which time D.B. was in danger of suffocating. After re-staring the equipment, Plaintiff had to provide life-saving measures to prevent D.B. from suffocating.

14.  As a result, Jones and Austin began to monitor Black's behavior. The family noted that Black did not clean certain equipment, and also that she smoked cigarettes around D.B., placing the infant's life in danger due to his asthma and disabled airways.

15.  After approximately three (3) months of observing Black, Jones and Austin called Brad Lawson, an administrator in Defendant's employ to report Black's mistreatment. In addition, the family approached Black directly to discuss

the level of care being provided to D.B. Austin and Jones told Black that they noticed her smoking, and that D.B. was being poorly cared for. In response, Black became combative, and physically threatened Austin, saying that she would "fuck you up," and "I have had something for you."

16. The next shift change, when Plaintiff relieved her, Black told Plaintiff, Jones, and Austin that she would "fuck you up." Black, apparently also holding Plaintiff to blame for the family's concern, told Plaintiff that "you will pay for what you did."

17. As a result, Austin filed a complaint with Defendant against Black. Following such complaint, agents of Defendant investigated, and obtained recorded statements from the family and also from Plaintiff.

18. Approximately two weeks later, Black was removed from D.B.'s care. At this time, both DoN Ward and Lawson were aware of Black's removal.

19. For approximately the next three years, Plaintiff continued to care for D.B. without reprimand, and was able to instruct the family on how to properly care for the infant and maintain her equipment in her absence. In that regard, as D.B. became a bit older, Plaintiff was required to work fewer hours, because D.B. was in a more stable physical condition. Plaintiff continued to work approximately sixty (60) hours per week.

20.    In or around August 2016, Defendant hired Lindsey as its new Administrator.

21.    Following Lindsey's hire, later in August 2016, Black was once again assigned to D.B.'s care, in contravention of the previous order of removal and against the family's wishes.

22.    On August 17, 2016, Cassandra (l/n/u) called Plaintiff and notified her that she would be training Black. Plaintiff told Cassandra (l/n/u) that Black had previously been removed from D.B.'s care. Jones also called Cassandra (l/n/u), informing that Black had earlier been removed from D.B.'s care, and indicating that she would prefer to not have Black reassigned to care for her child. Nevertheless, Black was not removed from the assignment.

23.    On Plaintiff's first day once again working with her, Black threatened her by saying, "I'm back, bitch," and "you're going to pay for what you did."

24.    On August 19, 2016, Plaintiff spoke with Ward, now a supervisor, and the same individual who had worked as DoN when Black was removed from D.B.'s care in 2013. Lindsey was also present for that conversation, on behalf of Defendant's compliance office. Plaintiff told Ward and Lindsey that Black had threatened her life, and that based on the earlier investigation and removal, Black was not allowed to be assigned to patient D.B.'s care. Plaintiff further informed Ward and Lindsey Black specifically stated to her, "I'm going to destroy you."

Ward and Lindsey responded that they did not have written documentation of Black's earlier removal from D.B.'s care. Further, Plaintiff offered to produce witnesses to Black's threats, and also informed Ward and Lindsey about her intention to file a grievance. Lindsey dismissed Plaintiff's complaint by saying she was upset about "having her hours cut" based on now sharing the assignment with Black. Lindsey then told Plaintiff that her overtime hours were no longer approved. Thus, going forward Plaintiff could work only forty (40) hours per week, and Black continued to work with D.B.

25.     Shortly thereafter, Plaintiff wrote a grievance against Black due to her actions and threats, and also based on the previous substandard care provided to D.B., and faxed it to Defendant's hotline; that hotline system was designed to have agents from Defendant's corporate office investigate complaints.

26.     On August 21, 2016, in a completely inappropriate manner, Black wrote accusations against Plaintiff's care in D.B.'s patient chart; a patient chart is a space available for medical notations only. Plaintiff reported this to Defendant's hotline. Defendant's agents called Jones to ask her questions in connection with Plaintiff's hotline submission, but Plaintiff was never contacted with feedback. Black's behavior was not investigated.

27.     For over a month, Plaintiff worked alongside Black and endured her threatening behavior, because Ward and Lindsey did not remove her. Black

consistently threatened Plaintiff, Jones, and Austin, saying she'd "fuck you up," and did not properly care for D.B. by not cleaning his breathing and feeding equipment.

28. Plaintiff spoke on the phone with Ward and Lindsey several times to report Black's behavior and poor care. Ward and Lindsey did not remedy the situation, telling Plaintiff "you're going to have to wait," and "our hands are tied." Ward and Lindsey responded instead that "we can't keep paying you overtime," that statement apparently meant to excuse Black's continued assignment to D.B.'s care.

29. Because Black's abusive behavior and substandard care continued, on September 13, 2016, Plaintiff called Defendant's compliance hotline and spoke with an agent to report Ward's and Lindsey's inactions. Plaintiff also faxed an additional physical complaint to the hotline. Plaintiff was told that an agent would follow up with her in several days. Thereafter, Plaintiff was aware that the hotline notified Ward and Lindsey of Plaintiff's complaints.

30. On September 21, 2016, Ward and Lindsey together called Plaintiff home, on her home telephone, and demanded to know what Plaintiff had told the compliance officer. In retaliation for reporting, Ward and Lindsey placed Plaintiff on administrative leave without pay "pending an investigation." Ward and Lindsey

did not give Plaintiff written notice of investigation, and refused to tell her why she was under investigation.

31. Thereafter, D.B.'s family repeatedly called Defendant requesting to have Plaintiff re-assigned to D.B.'s care. During the time that Black cared for D.B., he was not eating and his condition worsened. As a result, Jones continued to call Defendant's hotline.

32. Austin also had occasion to visit the home and discovered Black as the sole caretaker of D.B. Afraid for the safety of her grandson, Austin called the hotline, but was told she was "not the responsible person" (presumably meaning that the care of D.B. could not be discussed with her).

33. On September 29, 2016 Cunningham returned Plaintiff's call. Plaintiff asked Cunningham for the reason behind the supposed investigation against her. Cunningham replied, "you can't be under investigation," and told Plaintiff that she was not aware of any investigation against her. In fact, Cunningham was under the impression that she was calling Plaintiff to inquire about Black's behavior.

34. On or about October 10, 2016, Plaintiff received another phone call from Cunningham, whose demeanor changed. On that occasion, Cunningham rudely asked Plaintiff if she had requested that Austin call the hotline. Plaintiff responded that she was not aware of the grandmother's call. In point of fact, the mother and grandmother were provided the hotline number in the child's original

care packet, and were free to call the hotline on their own initiatives if they so desired.

35. In addition, on October 10, 2016, Plaintiff attempted to explain the reason for her concerns and the reports of abuse by Black, but Cunningham was not interested in hearing Plaintiff's version of events. Plaintiff was still not given any information about the proceedings, or the result of the investigation.

36. Ward and Lindsey then visited Jones at her workplace and requested that she lie to incriminate Plaintiff in the contrived investigation. Jones was asked to say that Plaintiff placed D.B. in her personal vehicle, and that Plaintiff instigated a conflict with Black. Jones refused to lie to Ward and Lindsey, and instead told them that Plaintiff was a dedicated employee.

37. In fact, Jones continued to seek out Plaintiff's care for her child. Because Jones and Austin were unable to get Plaintiff reassigned to the care of D.B., they discontinued the services of Defendant Maxim. Jones and Austin then requested health services from a separate company and specifically requested that Plaintiff be hired by that company. Thus, Plaintiff continues to care for D.B. in accord with the family's wishes, but not on behalf of Defendant.

38. Plaintiff did not hear from anyone with Defendant regarding her employment or the investigation until approximately one year later. In fact, in approximately November 2017, Lindsey called Plaintiff to state he needed her

timesheets and her patient care notes. Lindsey also told Plaintiff that if she did not provide the requested documents, she was terminated, effective immediately.

39. In November 2017, Plaintiff was wrongfully terminated after she spoke out on Black's abusive behavior and substandard care. To date, Plaintiff has not received a notice of dismissal or any written documentation of the supposed investigation against her.

40. The actions by Black set forth above constitute violations of laws, rules, and/or regulations, including but not limited to §784.011, Fla.Stats., entitled "Assault," and ¶s (1)(j) and/or (n) of §464.018, Fla.Stats., entitled "Disciplinary action" under Part I of Chapter 464, Fla.Stats., the Nurse Practice Act.

41. Defendant's failure to respond to Plaintiff's grievances, hotline communications, and other complaints against Black set forth above, failure to investigate Black, and failure to discipline Black, and then the reassignment of Black to care for D.B., constituted its adoption, approval, sanction, and ratification of Black's violations of laws, rules, and/or regulations.

42. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee, along with expenses incurred in connection with this action, under applicable law.

## COUNT I-PRIVATE EMPLOYEE WHISTLEBLOWER RETALIATION

43. Paragraphs 1-42 above are re-alleged and incorporated.

44. This count sets forth a private employee whistleblower retaliation claim, and is brought under §448.101, *et seq.*, Fla.Stats.

45. As set forth in greater detail above, during the course of her employment, Plaintiff objected to certain practices of Defendant that were in violation of laws, rules, and /or regulations, or that she reasonably and objectively believed were in such violation.

46. After Plaintiff objected, Defendant mistreated and then terminated her. Plaintiff was mistreated and terminated after she objected to and/or refused to participate in practices of Defendant that were in violation of one or more laws, rules or regulations or that she reasonably and objectively believed were in such violation.

47. Plaintiff disclosed a practice of Defendant that was in violation of one or more laws, rules or regulations, and Plaintiff brought the activity, policy or practice to the attention of a supervisor of Defendant and afforded Defendant a reasonable opportunity to correct the activity, policy, or practice and/or objected to, or refused to participate in, such activity, policy, or practice

48. The disclosures made by Plaintiff are protected under §448.102, Fla.Stats.

49. As a direct and proximate result of Plaintiff's participation in the whistleblowing activities identified herein, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and intangible damages and every other kind of damage allowed by law; Plaintiff has also suffered emotional pain and suffering damages and other intangible damages. These damages have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiff is entitled to equitable/injunctive relief under this count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this court take jurisdiction over this cause;

(b) that this court enter judgment against Defendant and for Plaintiff granting equitable relief against Defendant under the applicable count or counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) that this court enter judgment against Defendant and for Plaintiff awarding all legally-available general and

        compensatory damages, including damages for economic loss, to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    that this court enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    that this court enter judgment against Defendant and for Plaintiff awarding Plaintiff costs and attorney's fees;

(f)    that this court enter judgment against Defendant and for Plaintiff awarding Plaintiff interest where appropriate; and

(g)    that this court grant such other and further relief as is just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 N. Gadsden St.
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Email: marie@mattoxlaw.com
Secondary emails:
michelle2@mattoxlaw.com
marlene@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all counsel of record via CM/ECF this 21st day of February, 2019.

/s/ Marie A. Mattox
Marie A. Mattox